IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES M. CONNER, III<br><br>Plaintiff,<br><br>vs.<br><br>WASHINGTON NATIONAL<br>INSURANCE COMPANY<br><br>Defendant. | CIVIL ACTION<br><br>JURY TRIAL DEMANDED. |

## COMPLAINT

NOW COMES Plaintiff, James M. Conner, III, by and through his Counsel, who hereby files this Complaint against Defendant, Washington National Insurance Company, alleging as follows:

## PARTIES

1. James M. Conner, III is an adult individual who resides at 8967 Elm Street, Allison Park, Pennsylvania.

2. Washington National Insurance Company ("WNIC") is an insurance company and Indiana corporation. WNIC's headquarters is located at 11825 N Pennsylvania St, Carmel, Indiana, 46032.

3. At all relevant times, WNIC was engaged in the practices of providing and/or underwriting Accidental Death and Dismemberment (AD&D) insurance policies.

## JURISDICTION AND VENUE

4. The January 23, 2023 motor vehicle accident giving rise to Plaintiff's claim for AD&D benefits occurred in Pennsylvania.

5. Plaintiff resided in Pennsylvania on January 23, 2023 and when WNIC issued Plaintiff his AD&D policy.

6. At all relevant times, WNIC conducted business in Pennsylvania.

7. The amount in dispute exceeds $75,000.00 and, thus, jurisdiction is conferred on the basis of 28 U.S.C. §1332.

8. WNIC regularly conducts business in Philadelphia and throughout the Eastern District of Pennsylvania.

## FACTS

9. Plaintiff had a written AD&D policy with WNIC that was valid on January 23, 2023, Policy No. CM00153602. Plaintiff does not possess a copy of this policy, but will obtain it through discovery.

10. On January 23, 2023, Plaintiff was involved in a motor vehicle accident.

11. Plaintiff suffered a traumatic amputation of his left foot at the scene of the accident and first responders were unable to find his left foot. Plaintiff also suffered a traumatic partial amputation of his right foot, which remained attached only by a "flap."

12. Plaintiff's medical records indicate that, as a result of the January 23, 2023 accident, Plaintiff suffered a left tibial plateau fracture and left fibula fracture, a right fibula fracture, a traumatic below knee amputation to his left lower extremity, a mangled right ankle and foot (partial traumatic amputation) with multiple open fractures of the foot and exposed neurovascular structures, a 1st rib fracture on the left with a small pneumothorax, a left clavicle fracture, and a left acromion (scapula) fracture.

13. On January 23, 2023, shortly after the accident, Plaintiff underwent emergent surgery for a revision amputation of his traumatic left below knee amputation, and amputation surgery of his "mangled" right lower leg through the ankle joint. Thus, both of Plaintiff's lower extremities have been amputated.

14. The January 23, 2023 Operative Report lists the procedures performed on that day as follows: "1. Left revision below-knee-amputation; 2. Debridement extensive contamination left lower leg with debridement muscle soft tissue and skin; 3. I and D open left proximal fibula fracture; 4. Amputation right lower leg through ankle joint; 5. Open treatment medial malleolar fracture right ankle with excision medial malleolus; 6. I and D right lower extremity including bone soft tissue and skin; 7. Application wound VAC 20 by 15 cm left BKA."

15. On January 25, 2023, Plaintiff underwent additional revision surgery for each of his bilateral lower extremity amputations. The January 25, 2023 Operative Report lists the procedures performed on that day as follows: "1. Revision left below-knee amputation; 2. I and D left leg with debridement of skin and muscle and bone; 3. Wound VAC approximately 20 x 15 cm left below knee stump; 4. Revision amputation right below-knee amputation."

16. On February 2, 2023, Plaintiff underwent open reduction internal fixation surgery of his left clavicle fracture and left acromion (scapula) fracture.

17. Plaintiff underwent multiple additional surgeries and other extensive medical care for his injuries.

18. Plaintiff made a claim for AD&D benefits under the aforesaid AD&D policy issued to him by WNIC, Claim number 230000015166.

19. WNIC found that there was coverage under Plaintiff's AD&D policy. On June 27, 2023, WNIC paid Plaintiff $4,100.00 on his claim, which was an arbitrary and incorrect amount.

20. Plaintiff contacted WNIC to advise that he had been paid an amount far less than what he was entitled to under the policy for his significant injuries described herein.

21. Then, by letters dated July 13, 2023 and July 28, 2023, WNIC advised Plaintiff that it had reversed its coverage decision and requested repayment of the $4,100.00 paid on Mr. Conner's claim.

22. The July 13, 2023 letter stated, in part:

During a recent review, it was determined that your claim was paid incorrectly on 6/27/2023.

A check was paid to you in the amount of $4,100.00 for claim 2300000015166. Under Section 5: Limitations and Exclusions the policy states "We will not pay benefits for loss contributed to, caused by, or resulting from Your: Intoxication: Being legally intoxicated, or so intoxicated that mental or physical abilities are seriously impaired, being under the influence of any illegal drugs, or being under the influence of any narcotic, unless such narcotic is administered on the advice of a Physician." Based on the medical records received, no benefits should have been paid for the January 23, 2023 Accident.

23. Plaintiff's medical records do not make any note of any signs of visible intoxication. The Allegheny General Hospital Emergency Department records indicate that upon arrival to the Emergency Department, Plaintiff was "Oriented" and was "Awake and alert...with a Glasgow Coma Scale of 15", the highest Glasgow Coma Scale rating within the scale of 0 – 15. Plaintiff was talking and was able to recount the details of the accident.

24. The Emergency Department records state that upon arrival to the Emergency Department: "He is alert and oriented to person, place, and time. Mental status is at baseline."

25. Upon arrival to the Emergency Department the following assessment was made: "Mood and Affect: Mood normal"; "Behavior: Behavior normal"; "Thought Content: Thought content normal"; "Judgment: Judgment normal."

26. The police report does not make any note of any evidence of intoxication, much less any sort of causal connection with alcohol intoxication, illegal drugs, or narcotics. The police report noted that Mr. Conner was "alert" when the officer spoke to him.

27. WNIC did not consider the police report in making its determination to reverse, deny, or pay any part of the benefits.

28. There is no evidence that alcohol or any other type of intoxication or illegal drugs or narcotics caused or contributed to the accident in any fashion.

## COUNT ONE
### Breach of Contract

29. Plaintiff incorporates the above paragraphs by reference, as though fully set forth herein.

30. Plaintiff's AD&D insurance policy is a contract between Plaintiff and Defendant and was in effect at all relevant times.

31. Plaintiff made a claim for dismemberment benefits under his AD&D policy for the injuries sustained in the January 23, 2023 accident.

32. WNIC determined that Plaintiff was entitled to benefits under his AD&D policy for his injuries sustained in the January 23, 2023 accident, but paid him an arbitrary and incorrect amount of $4,100.00.

33. WNIC subsequently reversed its determination that Plaintiff was entitled to benefits under his AD&D policy, and requested repayment of the $4,100.00, based on the following, or substantially similar, exclusion provision: "We will not pay for loss contributed to, caused by or resulting from the insured being…legally intoxicated or so intoxicated that mental or physical abilities are seriously impaired; being under the influence of any narcotic, unless such narcotic is taken under the direction of a physician…"

34. Where coverage is denied based on an exclusion, the burden is on the insurer to prove the applicability of the exclusion.

35. There is no evidence that the January 23, 2023 accident was "contributed to, caused by or resulting from" Plaintiff being legally intoxicated or so intoxicated that his mental or physical abilities were seriously impaired, being under the influence of any illegal drugs, or being under the influence of any narcotic.

36. WNIC had a contractual and fiduciary duty to conduct a reasonable investigation which it failed to do.

37. A reasonable investigation would have determined that WNIC must provide coverage for Plaintiff's claim for dismemberment compensation and other benefits, and in an amount far greater than the $4,100.00 WNIC had paid on Plaintiff's AD&D claim.

38. WNIC breached its contract with Plaintiff, and breached its fiduciary duty and covenant of good faith and fair dealing by only paying $4,100.00 on Plaintiff's AD&D claim.

39. By reversing its determination that Plaintiff was entitled to benefits and requesting repayment of the $4,100.00, and by denying Plaintiff's claim for dismemberment compensation and other benefits WNIC breached its contract with Plaintiff, and breached its fiduciary duty and covenant of good faith and fair dealing.

## COUNT TWO
### Bad Faith – 42 Pa.C.S. §8371

40. Plaintiff incorporates the above paragraphs by reference, as though fully set forth herein.

41. The initial payment amount of $4,100.00 was incorrect and not made on a reasonable basis, which WNIC, by and through its employees and/or agents, knew of or recklessly disregarded.

42. WNIC had a contractual and fiduciary duty to conduct a reasonable investigation which it failed to do.

43. A reasonable investigation would have determined that WNIC must provide coverage for Plaintiff's claim for dismemberment compensation and other benefits

44. WNIC did not have a reasonable basis to reverse its determination that Plaintiff was entitled to benefits and then deny Plaintiff's AD&D claim, which WNIC, by and through its employees and/or agents, knew of or recklessly disregarded.

45. The "recent review" referred to in WNIC's July 13, 2023 letter to Plaintiff and the reversal of its coverage determination and request for repayment of the $4,100.00, occurred after

Plaintiff contacted WNIC to complain that he had been paid an amount far less than what he was entitled to under the policy, and that he should have been compensated for multiple fractures and the below knee amputation of both of his lower extremities as a result of the January 23, 2023 accident.

46. By reversing its determination that Plaintiff was entitled to benefits and requesting repayment of the $4,100.00, and by denying Plaintiff's claim for dismemberment compensation and other benefits, WNIC acted in bad faith in violation to 42 Pa. C.S. §8371.

47. The basis for WNIC's denial and reversal of dismemberment compensation benefits and reason for requesting repayment of the $4,100.00, was to generate more profit, in reckless and/or deliberate disregard for the welfare of its insured, acting with malice.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against Defendant WNIC as follows:

- A. Award compensatory damages in the amount of all AD&D dismemberment, injury, medical, and other benefits that Plaintiff is found to be entitled to under his AD&D policy with WNIC;

- B. Award punitive damages for WNIC's bad faith actions towards Plaintiff pursuant to 42 Pa.C.S. §8371;

- C. Award attorney's fees, costs, and expenses for WNIC's bad faith actions towards Plaintiff pursuant to 42 Pa.C.S. §8371;

- D. Award interest on all amounts awarded from the date the claim was made equal to the prime interest rate plus 3% for WNIC's bad faith actions towards Plaintiff pursuant to 42 Pa.C.S. §8371; and,

- E. Award any other relief that this Honorable Court deems just and equitable.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.
*/s/ Richard Shenkan*
Richard Shenkan
Attorney for Plaintiff