UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| JAMES M. CONNER, III,  )<br>)<br>    Plaintiff,  )<br>)<br>v.  )<br>)<br>WASHINGTON NATIONAL INSURANCE  )<br>COMPANY,  )<br>)<br>    Defendant.  )<br>_____)  | Case No. 2:23-cv-01614-AJS |

**ANSWER TO COMPLAINT AND ADDITIONAL DEFENSES**

COMES NOW Defendant Washington National Insurance Company (hereinafter "Washington National"), by and through its Counsel, for its Answer to Complaint and Additional Defenses alleges as follows:

**PARTIES**

1. James M. Conner, III is an adult individual who resides at 8967 Elm Street, Allison Park, Pennsylvania.

**ANSWER:**   Upon information and belief, Washington National admits the allegations in Paragraph 1 of the Complaint.

2. Washington National Insurance Company ("WNIC") is an insurance company and Indiana corporation. WNIC's headquarters is located at 11825 N Pennsylvania St, Carmel, Indiana, 46032.

**ANSWER:**   Washington National admits the allegations in Paragraph 2 of the Complaint.

3. At all relevant times, WNIC was engaged in the practices of providing and/or

1

underwriting Accidental Death and Dismemberment (AD&D) insurance policies.

**ANSWER:** Washington National admits the allegations in Paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4. The January 23, 2023 motor vehicle accident giving rise to Plaintiff's claim for AD&D benefits occurred in Pennsylvania.

**ANSWER:** Washington National admits the allegations in Paragraph 4 of the Complaint.

5. Plaintiff resided in Pennsylvania on January 23, 2023 and when WNIC issued Plaintiff his AD&D policy.

**ANSWER:** Upon information and belief, Washington National admits the allegations in Paragraph 5 of the Complaint.

6. At all relevant times, WNIC conducted business in Pennsylvania.

**ANSWER:** Washington National admits the allegations in Paragraph 6 of the Complaint.

7. The amount in dispute exceeds $75,000.00 and, thus, jurisdiction is conferred on the basis of 28 U.S.C. §1332.

**ANSWER:** Washington National admits the allegations in Paragraph 7 of the Complaint.

8. WNIC regularly conducts business in Philadelphia and throughout the Eastern District of Pennsylvania.

**ANSWER:** Washington National admits the allegations in Paragraph 8 of the Complaint.

# FACTS

9. Plaintiff had a written AD&D policy with WNIC that was valid on January 23, 2023, Policy No. CM00153602. Plaintiff does not possess a copy of this policy, but will obtain it through discovery.

**ANSWER:** Washington National is without information or knowledge sufficient to form a belief as to whether Plaintiff possesses a copy of the Policy. Such averments are specifically denied in their entirety. Washington National admits the existence of the policy described in Paragraph 9 of the Complaint and that it was in full force and effect on January 23, 2023.

10. On January 23, 2023, Plaintiff was involved in a motor vehicle accident.

**ANSWER:** Washington National admits the allegations in Paragraph 10 of the Complaint.

11. Plaintiff suffered a traumatic amputation of his left foot at the scene of the accident and first responders were unable to find his left foot. Plaintiff also suffered a traumatic partial amputation of his right foot, which remained attached only by a "flap."

**ANSWER:** Washington National admits the allegations in Paragraph 11 of the Complaint.

12. Plaintiff's medical records indicate that, as a result of the January 23, 2023 accident, Plaintiff suffered a left tibial plateau fracture and left fibula fracture, a right fibula fracture, a traumatic below knee amputation to his left lower extremity, a mangled right ankle and foot (partial traumatic amputation) with multiple open fractures of the foot and exposed neurovascular structures, a 1st rib fracture on the left with a small pneumothorax, a left clavicle fracture, and a left acromion (scapula) fracture.

**ANSWER:** Washington National admits the allegations in Paragraph 12 of the Complaint.

13. On January 23, 2023, shortly after the accident, Plaintiff underwent emergent surgery for a revision amputation of his traumatic left below knee amputation, and amputation surgery of his "mangled" right lower leg through the ankle joint. Thus, both of Plaintiff's lower extremities have been amputated.

**ANSWER:** Washington National admits the allegations in Paragraph 13 of the Complaint.

14. The January 23, 2023 Operative Report lists the procedures performed on that day as follows: "1. Left revision below-knee-amputation; 2. Debridement extensive contamination left lower leg with debridement muscle soft tissue and skin; 3. I and D open left proximal fibula fracture; 4. Amputation right lower leg through ankle joint; 5. Open treatment medial malleolar fracture right ankle with excision medial malleolus; 6. I and D right lower extremity including bone soft tissue and skin; 7. Application wound VAC 20 by 15 cm left BKA."

**ANSWER:** Washington National admits the allegations in Paragraph 14 of the Complaint.

15. On January 25, 2023, Plaintiff underwent additional revision surgery for each of his bilateral lower extremity amputations. The January 25, 2023 Operative Report lists the procedures performed on that day as follows: "1. Revision left below-knee amputation; 2. I and D left leg with debridement of skin and muscle and bone; 3. Wound VAC approximately 20 x 15 cm left below knee stump; 4. Revision amputation right below-knee amputation."

**ANSWER:** Upon information and belief, Washington National admits the allegations in Paragraph 15 of the Complaint.

16. On February 2, 2023, Plaintiff underwent open reduction internal fixation surgery of his left clavicle fracture and left acromion (scapula) fracture.

**ANSWER:**   Washington National admits the allegations in Paragraph 16 of the Complaint.

17.   Plaintiff underwent multiple additional surgeries and other extensive medical care for his injuries.

**ANSWER:**   Upon information and belief, Washington National admits the allegations in Paragraph 17 of the Complaint.

18.   Plaintiff made a claim for AD&D benefits under the aforesaid AD&D policy issued to him by WNIC, Claim number 230000015166.

**ANSWER:**   Washington National admits the allegations in Paragraph 18 of the Complaint.

19.   WNIC found that there was coverage under Plaintiff's AD&D policy. On June 27, 2023, WNIC paid Plaintiff $4,100.00 on his claim, which was an arbitrary and incorrect amount.

**ANSWER:**   Washington National admits issuance of the $4,100.00 payment but denies the balance of the allegations in Paragraph 19 of the Complaint.

20.   Plaintiff contacted WNIC to advise that he had been paid an amount far less than what he was entitled to under the policy for his significant injuries described herein.

**ANSWER:**   Washington National denies the allegations in Paragraph 20 of the Complaint.

21.   Then, by letters dated July 13, 2023 and July 28, 2023, WNIC advised Plaintiff that it had reversed its coverage decision and requested repayment of the $4,100.00 paid on Mr. Conner's claim.

**ANSWER:**   Washington National admits the allegations in Paragraph 21 of the Complaint.

22. The July 13, 2023 letter stated, in part:

> During a recent review, it was determined that your claim was paid incorrectly on 6/27/2023.
>
> A check was paid to you in the amount of $4,100.00 for claim 230000015166. Under Section 5: Limitations and Exclusions the policy states "We will not pay benefits for loss contributed to, caused by, or resulting from Your: Intoxication: Being legally intoxicated, or so intoxicated that mental or physical abilities are seriously impaired, being under the influence of any illegal drugs, or being under the influence of any narcotic, unless such narcotic is administered on the advice of a Physician." Based on the medical records received, no benefits should have been paid for the January 23, 2023 Accident.

**ANSWER:** Washington National admits the allegations in Paragraph 22 of the Complaint.

23. Plaintiff's medical records do **not** make any note of any signs of visible intoxication. The Allegheny General Hospital Emergency Department records indicate that upon arrival to the Emergency Department, Plaintiff was "Oriented" and was "Awake and alert ...with a Glasgow Coma Scale of 15", the highest Glasgow Coma Scale rating within the scale of 0 – 15. Plaintiff was talking and was able to recount the details of the accident.

**ANSWER:** Washington National denies the allegations in Paragraph 23 of the Complaint.

24. The Emergency Department records state that upon arrival to the Emergency Department: "He is alert and oriented to person, place, and time. Mental status is at baseline."

**ANSWER:** Washington National admits the allegations in Paragraph 24 of the Complaint.

25. Upon arrival to the Emergency Department the following assessment was made: "Mood and Affect: Mood normal"; "Behavior: Behavior normal"; "Thought Content:

Thought content normal"; "Judgment: Judgment normal."

**ANSWER:** Washington National admits the allegations in Paragraph 25 of the Complaint.

26. The police report does **not** make any note of any evidence of intoxication, much less any sort of causal connection with alcohol intoxication, illegal drugs, or narcotics. The police report noted that Mr. Conner was "alert" when the officer spoke to him.

**ANSWER:** Washington National admits that the Police Report does not make note of intoxication. It states:

| Alcohol/Drugs Suspected | Alcohol Test Type | Alcohol Test Results |
|---|---|---|
| Unknown | Test not given | Test not given |

27. WNIC did not consider the police report in making its determination to reverse, deny, or pay any part of the benefits.

**ANSWER:** Washington National admits the allegations in Paragraph 27 of the Complaint.

28. There is no evidence that alcohol or any other type of intoxication or illegal drugs or narcotics caused or contributed to the accident in any fashion.

**ANSWER:** Washington National denies the allegations in Paragraph 28 of the Complaint.

## COUNT ONE
### Breach of Contract

29. Plaintiff incorporates the above paragraphs by reference, as though fully set forth herein.

**ANSWER:** Washington National incorporates by reference its answers to all prior paragraphs as if fully set forth herein.

30. Plaintiff's AD&D insurance policy is a contract between Plaintiff and Defendant and was in effect at all relevant times.

**ANSWER:** Washington National admits the allegations in Paragraph 30 of the Complaint.

31. Plaintiff made a claim for dismemberment benefits under his AD&D policy for the injuries sustained in the January 23, 2023 accident.

**ANSWER:** Washington National admits the allegations in Paragraph 31 of the Complaint.

32. WNIC determined that Plaintiff was entitled to benefits under his AD&D policy for his injuries sustained in the January 23, 2023 accident, but paid him an arbitrary and incorrect amount of $4,100.00.

**ANSWER:** Washington National denies the allegations in Paragraph 32 of the Complaint.

33. WNIC subsequently reversed its determination that Plaintiff was entitled to benefits under his AD&D policy, and requested repayment of the $4,100.00, based on the following, or substantially similar, exclusion provision: "We will not pay for loss contributed to, caused by or resulting from the insured being...legally intoxicated or so intoxicated that mental or physical abilities are seriously impaired; being under the influence of any narcotic, unless such narcotic is taken under the direction of a physician ..."

**ANSWER:** Washington National denies determining that Plaintiff's claim was covered, admits issuance of a $4,100.00 payment and that the subject policy contains the quoted exclusion

34. Where coverage is denied based on an exclusion, the burden is on the insurer to

prove the applicability of the exclusion.

**ANSWER:**   Washington National admits the allegations in Paragraph 34 of the Complaint.

35.   There is no evidence that the January 23, 2023 accident was "contributed to, caused by or resulting from" Plaintiff being legally intoxicated or so intoxicated that his mental or physical abilities were seriously impaired, being under the influence of any illegal drugs, or being under the influence of any narcotic.

**ANSWER:**   Washington National denies the allegations in Paragraph 35 of the Complaint.

36.   WNIC had a contractual and fiduciary duty to conduct a reasonable investigation which it failed to do.

**ANSWER:**   Washington National admits the allegations in Paragraph 36 of the Complaint.

37.   A reasonable investigation would have determined that WNIC must provide coverage for Plaintiff's claim for dismemberment compensation and other benefits, and in an amount far greater than the $4,100.00 WNIC had paid on Plaintiff's AD&D claim.

**ANSWER:**   Washington National denies the allegations in Paragraph 37 of the Complaint.

38.   WNIC breached its contract with Plaintiff, and breached its fiduciary duty and covenant of good faith and fair dealing by only paying $4,100.00 on Plaintiff's AD&D claim.

**ANSWER:**   Washington National denies the allegations in Paragraph 38 of the Complaint.

39. By reversing its determination that Plaintiff was entitled to benefits and requesting repayment of the $4,100.00, and by denying Plaintiff's claim for dismemberment compensation and other benefits WNIC breached its contract with Plaintiff, and breached its fiduciary duty and covenant of good faith and fair dealing.

**ANSWER:** Washington National denies the allegations in Paragraph 39 of the Complaint.

## COUNT TWO
### Bad Faith – 42 Pa.C.S. §8371

40. Plaintiff incorporates the above paragraphs by reference, as though fully set forth herein.

**ANSWER:** Washington National incorporates by reference its answers to all prior paragraphs as if fully set forth herein.

41. The initial payment amount of $4,100.00 was incorrect and not made on a reasonable basis, which WNIC, by and through its employees and/or agents, knew of or recklessly disregarded.

**ANSWER**: Washington National admits payment of $4,100.00 was incorrect, but denies the balance of the allegations in Paragraph 41 of the Complaint.

42. WNIC had a contractual and fiduciary duty to conduct a reasonable investigation which it failed to do.

**ANSWER:** Washington National denies the allegations in Paragraph 42 of the Complaint.

43. A reasonable investigation would have determined that WNIC must provide coverage for Plaintiff's claim for dismemberment compensation and other benefits.

**ANSWER:** Washington National denies the allegations in Paragraph 43 of the

Complaint.

44. WNIC did not have a reasonable basis to reverse its determination that Plaintiff was entitled to benefits and then deny Plaintiff's AD&D claim, which WNIC, by and through its employees and/or agents, knew of or recklessly disregarded.

**ANSWER:** Washington National denies the allegations in Paragraph 44 of the Complaint.

45. The "recent review" referred to in WNIC's July 13, 2023 letter to Plaintiff and the reversal of its coverage determination and request for repayment of the $4,100.00, occurred after Plaintiff contacted WNIC to complain that he had been paid an amount far less than what he was entitled to under the policy, and that he should have been compensated for multiple fractures and the below knee amputation of both of his lower extremities as a result of the January 23, 2023 accident.

**ANSWER:** Washington National denies the allegations in Paragraph 45 of the Complaint.

46. By reversing its determination that Plaintiff was entitled to benefits and requesting repayment of the $4,100.00, and by denying Plaintiff's claim for dismemberment compensation and other benefits, WNIC acted in bad faith in violation to 42 Pa. C.S. §8371.

**ANSWER:** Washington National denies the allegations in Paragraph 46 of the Complaint.

47. The basis for WNIC's denial and reversal of dismemberment compensation benefits and reason for requesting repayment of the $4,100.00, was to generate more profit, in reckless and/or deliberate disregard for the welfare of its insured, acting with malice.

**ANSWER:** Washington National denies the allegations in Paragraph 47 of the

Complaint.

48. Any allegations or averments not specifically admitted are hereby denied.

## ADDITIONAL DEFENSES

Defendant Washington National Insurance Company, by way of further answer and defense, but not in diminution or derogation of the admissions or denials set forth hereinabove, alleges and states as follows:

1. Washington National hereby raises the terms and conditions of the subject policy and all supporting or related documents, and all defenses available and/or promulgated thereunder, and avers further that Plaintiff's claims are barred and/or diminished by operation of the contractual agreement by and between the parties including any documents and/or application for coverage made a part of the policy.

2. The injuries for which Plaintiff seeks coverage are excluded by operation of the following provision of the subject policy:

> **SECTION 5: LIMITATIONS AND EXCLUSIONS**
>
> We will not pay benefits for Loss contributed to, caused by, or resulting from Your:
>
> **INTOXICATION:** Being legally intoxicated, or so intoxicated that mental or physical abilities are seriously impaired, being under the influence of any illegal drugs, or being under the influence of any narcotic, unless such narcotic is administered on the advice of a Physician.

3. Plaintiff has not suffered any damage, and therefore Plaintiff's Complaint fails to state a claim upon which relief may be granted.

4. Washington National has not breached any duty to the Plaintiff.

5. Washington National complied with all applicable laws of the State of Pennsylvania and/or any other relevant jurisdictions.

6. The conduct of Washington National in this matter does not rise to the level of reckless or willful misconduct and accordingly does not merit or justify an award of punitive damages.

7. Any award of punitive damages under the applicable law, facts and circumstances herein would be unconstitutional pursuant to the Pennsylvania and United States constitutions.

8. The conduct of Washington National in this matter was neither vexatious nor unreasonable and, accordingly, does not merit or justify an award of attorney's fees.

9. Plaintiff has failed to state a claim upon which relief may be granted.

10. Plaintiff's claims are barred by the doctrines of consent, release, waiver, estoppel and/or accord and satisfaction.

11. Washington National reserves the right to assert additional defenses revealed in the course of discovery.

WHEREFORE, having answered the Plaintiff's Complaint, Defendant Washington National Insurance Company, asks that Plaintiff take nothing by way of his Complaint and that the case be dismissed, judgment be rendered for Washington National, and that Washington National be awarded all costs, attorneys' fees and such other relief as the Court may deem just and equitable in the premises.

September 28, 2023

Respectfully submitted,

S.K. HUFFER & ASSOCIATES, P.C.

/s/ Steven K. Huffer
Steven K. Huffer, IN Atty. No. 8459-49
Admitted *Pro Hac Vice*
9247 N. Meridian St., Ste. 340
Indianapolis, IN  46260
Telephone: (317) 564-4808
steveh@hufferlaw.com

and

MARSHALL DENNEHEY
Patricia S. Monahan, PA ID #58784
Carly P. Edman, PA ID #33913
Union Trust Building, Ste. 700
501 Grant St.
Pittsburgh, PA 15219
Telephone: (412) 803-1140
pamonahan@mdwcg.com
cpedman@mdwcg.com

Attorneys for the Defendant, Washington National Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of September, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard Shenkan
rshenkan@shenkanlaw.com

/s/ Steven K. Huffer
Steven K. Huffer