IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES M. CONNER, III. )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>WASHINGTON NATIONAL )<br>INSURANCE COMPANY and )<br>CNO SERVICES, LLC., )<br>)<br>Defendants. )<br>_____ ) | Civil Action<br><br>Case No.: 2:23-cv-01614-AJS<br><br>Hon. Arthur J. Schwab<br><br>Jury Trial Demanded |

# **FIRST AMENDED COMPLAINT** [1]

NOW COMES Plaintiff, James M. Conner, III, by and through his Counsel, who hereby files this First Amended Complaint as a matter of course pursuant to Fed. R. Civ. P. Rule 15(a)(1)(B), alleging as follows:

## **PARTIES**

1. James M. Conner, III. is an adult individual and Pennsylvania consumer who resides at 8967 Elm Street, Allison Park, Pennsylvania.

2. Washington National Insurance Company ("WNIC") is an insurance company and Indiana corporation, headquartered at 11825 North Pennsylvania St, Carmel, Indiana, 46032.

3. At all relevant times, WNIC was engaged in the practices of providing and/or underwriting Accidental Death and Dismemberment (AD&D) insurance policies.

4. CNO Services, LLC ("CNO Services") is an Indiana Limited Liability Company, headquartered at 11825 North Pennsylvania Street, Carmel, IN, 46032.

---
[1] Filed as a matter of course pursuant to F.R.C.P. Rule 15(a)(1)(B).

5. At all relevant times, CNO Services was engaged in the practice of providing insurance related services to WNIC.

6. WNIC and CNO Services are separate entities, but are both subsidiaries of CNO Financial Group, Inc.

7. At all relevant times, CNO Services was acting as an authorized agent of WNIC and, therefore, WNIC is vicariously liable for the conduct of its agent CNO Services under the doctrine of respondeat superior.

8. In addition, and/or in the alternative, the Defendants were engaged in a joint venture or joint enterprise relative to the conduct complained of herein.

## JURISDICTION AND VENUE

9. At all relevant times, WNIC conducted regular and systematic business in Pennsylvania.

10. At all relevant times, CNO Services conducted regular and systematic business in Pennsylvania.

11. The amount in dispute exceeds $75,000.00.

12. Plaintiff is a citizen of Pennsylvania, where he is domiciled.

13. WNIC is a citizen of Indiana, where it is headquartered and incorporated in.

14. Upon information and belief, CNO Services is a citizen of Indiana, where CNO Financial Group, Inc. is headquartered, and a citizen of Delaware, where CNO Financial Group, Inc. is incorporated.

15. Thus, Subject Matter Jurisdiction is conferred on the basis of 28 U.S.C. §1332.

16. Venue is appropriate in this District, as the January 23, 2023 motor vehicle accident giving rise to Plaintiff's claim for AD&D benefits occurred in the Eastern District of Pennsylvania.

17. Plaintiff resided in the Eastern District of Pennsylvania on January 23, 2023 and at the time WNIC issued Plaintiff his AD&D policy.

## FACTS

18. At all relevant times, Plaintiff was a consumer residing in Pennsylvania that purchased an AD&D policy issued by WNIC; Policy No. CM00153602 ("Policy").

19. Generally, the Policy provides coverage based upon the injuries sustained and the level and duration of hospital stay of its insured, subject to an exclusion if Plaintiff's loss was "contributed to, caused by, or resulting from" Plaintiff being intoxicated.

20. On January 23, 2023, the Policy was in effect with all premiums having been made by Plaintiff.

21. On January 23, 2023, Plaintiff was involved in a single car motor vehicle accident that resulted in him becoming a double-amputee, losing both legs below the knee.

22. Plaintiff timely made a claim for AD&D benefits under the aforesaid AD&D policy issued to him by WNIC, claim number 230000015166.

23. The payment due and owing for this double amputation is $40,000.

24. At the scene, Plaintiff extracted himself from the cabin of the crushed vehicle. There, he suffered a traumatic amputation of his left foot (first responders were unable to find his left foot). Plaintiff's right foot remained attached only by a "flap."

25. According to the police report, the catastrophic accident occurred at approximately 3:00 AM. The weather conditions were "Freezing Rain or Freezing Drizzle." The police report noted there was "Slippery Road Conditions (Wet/Ice/Snow)", the road was "snow covered," and "slushy."

26. The police report does _not_ make any reference of any alcohol of any kind.

27. The police report noted that Mr. Conner was "<u>alert</u>" when the officer spoke to him.

28. Throughout Plaintiffs' hospital stay, Plaintiff's medical records do <u>not</u> make any reference to any signs of <u>any</u> visible intoxication.

29. The Emergency Department records state that upon arrival to the Emergency Department describe Plaintiff's condition as follows:

(a) "<u>Oriented</u>" and "<u>Awake and alert</u>";

(b) Normal Glasgow Coma Scale of 15/15 (highest score: no problems with thinking ability or memory, fully awake, and responsive);

(c) "He is <u>alert</u> and oriented to person, place, and time. <u>Mental status is at baseline</u>."

(d) "Mood and Affect: <u>Mood normal</u>"; "Behavior: <u>Behavior normal</u>"; "Thought Content: <u>Thought content normal</u>"; "Judgment: <u>Judgment normal</u>."

30. The Emergency Department records further state that Plaintiff was talking and could recount the details of the accident.

## PLAINTIFF'S INJURIES FROM THE ACCIDENT

31. On January 23, 2023, both of Plaintiff's legs were amputated below the knee as a result of his injuries from the accident. Plaintiff's medical records indicate that Plaintiff suffered a left tibial plateau fracture and left fibula fracture, a right fibula fracture, a traumatic below knee amputation to his left lower extremity, a mangled right ankle and foot (partial traumatic amputation) with multiple open fractures of the foot and exposed neurovascular structures, a 1st rib fracture on the left with a small pneumothorax, a left clavicle fracture, and a left acromion (scapula) fracture. Plaintiff underwent emergent surgery for a revision amputation of his traumatic left below knee amputation, and amputation surgery of his "mangled" right lower leg through the ankle joint.

32. The January 23, 2023 Operative Report lists the procedures performed:

> "1. Left revision below-knee-amputation; 2. Debridement extensive contamination left lower leg with debridement muscle soft tissue and skin; 3. I and D open left proximal fibula fracture; 4. Amputation right lower leg through ankle joint; 5. Open treatment medial malleolar fracture right ankle with excision medial malleolus; 6. I and D right lower extremity including bone soft tissue and skin; 7. Application wound VAC 20 by 15 cm left BKA."

33. On January 25, 2023, Plaintiff underwent additional revision surgery for each of his bilateral lower extremity amputations. The January 25, 2023 Operative Report lists the procedures performed:

> "1. Revision left below-knee amputation; 2. I and D left leg with debridement of skin and muscle and bone; 3. Wound VAC approximately 20 x 15 cm left below knee stump; 4. Revision amputation right below-knee amputation."

34. On February 2, 2023, Plaintiff underwent open reduction internal fixation surgery of his left clavicle fracture and left acromion (scapula) fracture.

35. Thereafter, Plaintiff underwent multiple additional surgeries and other extensive medical care for his injuries, including being fitted for prosthetic legs.

## DETERMINATION OF COVERAGE AND PARTIAL PAYMENT

36. Initially, WNIC determined that Plaintiff's AD&D claim arising out of the January 23, 2023 accident was covered. On or about June 27, 2023, WNIC issued a check to Plaintiff in the amount of $4,100. To arrive at its coverage determination, Defendants conducted a thorough review of ***a comprehensive batch of medical records***.

37. WNIC's investigation did NOT include any reference with its check that the investigation was continuing and/or that the payment was made as an "advance" and/or with full reservation of its right to request a repayment and/or to continue its investigation.

38. Plaintiff reasonably relied on the accuracy of WNIC's seemingly unconditional finding of coverage and cashed the $4,100 WNIC check.

5

39. At that time of WNIC's tender of this partial payment, WNIC had performed an investigation which included a review of medical records documenting the amputation to both legs such that the compensation for the claim should have included ***more than ten (10) times this amount***.

### IMPROPER REVERSAL OF COVERAGE AND COLLECTION NOTICES

40. When WNIC and CNO Services determined that coverage existed and made the payment of $4,100, WNIC and CNO Services, through one or more of its agents or employees, had full knowledge of all the facts, or means of knowledge of all the facts, and the payment of $4,100 was made voluntarily and without any fraud, misrepresentation, duress, or coercion.

41. Pursuant to the Voluntary Payment Doctrine, this voluntary payment made by WNIC and CNO Services to Plaintiff was not thereafter legally collectible from Plaintiff by WNIC and CNO Services, which these Defendant's knew or should have known, but intentionally or recklessly disregarded.

42. After Plaintiff inquired into why he had not received the full benefit due to him, the Defendants made a deliberate and reckless reversal of its coverage determination, based on the ***IDENTICAL comprehensive batch of medical records*** it used to determine its prior coverage determination.

43. The Defendants based their reversal on a *single* medical record (a blood screen) which contained an express disclaimer:

> *This screen is for medical purposes **only** and not to be used for forensic or legal reasons*." (Emphasis added)

44. At the time the Defendants reversed its coverage position, WNIC did not have any verifiable, corroborating, and/or reliable evidence to support WNIC's determination

6

that any of Plaintiff's compensable injuries were "contributed to, caused by, or resulting from" alcohol.

45. The quantum of evidence that the Defendants used as the basis to provide coverage and then to reverse its coverage position did ***not*** include:

    (a)    Any statement by the Plaintiff or any witness or even investigating officer;

    (b)    Any consideration of the weather factors; or,
    (c)    Any consideration of the police report; (i.e., no reference of any kind to alcohol).

46. Defendants utilized the **same** medical records:

    (a)    To provide coverage;
    (b)    To make a partial payment for a covered claim;
    (c)    To reverse coverage; and,
    (d)    To send two dunning (collection) letters (**Exhibits 1** and **2**).

47. In a reckless effort to attempt to improperly recoup the $4,100 payment and wrongfully deny a substantial claim by standards of this Policy, the Defendants reversed their coverage determination based on a single medical record which, by its express language, was not intended to be used for any forensic or legal purpose, and which they had at the time made payment on Plaintiff's claim.

48. By letters dated July 13, 2023 and July 28, 2023, WNIC and CNO Services advised Plaintiff that they had reversed their coverage decision and requested repayment of the $4,100 paid to Plaintiff.

49. The July 13, 2023 letter stated, in part:

During a recent review, it was determined that your claim was paid incorrectly on 6/27/2023.

A check was paid to you in the amount of $4,100.00 for claim 230000015166. Under Section 5: Limitations and Exclusions the policy states "We will not pay benefits for loss contributed to, caused by, or resulting from Your: Intoxication: Being legally intoxicated, or so intoxicated that mental or physical abilities are seriously impaired, being

under the influence of any illegal drugs, or being under the influence of any narcotic, unless such narcotic is administered on the advice of a Physician." Based on the medical record**s** received, no benefits should have been paid for the January 23, 2023 Accident. (**Emphasis** added)

As a result, your claim is overpaid by $4,100.00. We apologize this overpayment occurred. To resolve the overpayment, please submit the enclosed form along with your check in the amount of $4,100.00 made payable to Washington National Insurance Company by 7/27/2023.

**<u>Exhibit 1</u>**.

50. The July 28, 2023 letter stated, in part:

Our records indicate we have not received payment in relation to our prior communication for the overpayment identified under your policy.

As stated in our prior correspondence, your claim is overpaid by $4,100.00. Please submit the enclosed form along with your check in the amount of $4,100.00 made payable to Washington National Insurance Company by 8/11/2023.

**<u>Exhibit 2</u>**.

51. As part of the Defendant(s)' systematic and uniform business practice, policy, and procedure, no federal nor Pennsylvania statutory disclosures were included in either dunning letter stating, *inter alia*, the consumer could dispute the debt or request that the basis for the debt be verified or explained.

52. Contrary to the purpose and the statutory framework of the remedial nature of consumer protection statutes, as part of these demands for repayment, the Defendants required the Plaintiff to submit a check along with a form document (purportedly) having Plaintiff acknowledge that the amount was for an "overpayment amount" and, thereby, effectively waiving the Plaintiffs right to challenge the denial of coverage.

53. Plaintiff will seek discovery to determine the scope of this business practice, policy, and procedure and will promptly seek to amend this complaint to include a class-wide relief as practicable.

## COUNT I
### BREACH OF CONTRACT
### (WNIC ONLY)

54. Plaintiff incorporates all paragraphs in this Complaint by reference, as though fully set forth herein.

55. Plaintiff's AD&D insurance policy is a contract between Plaintiff and WNIC and was in effect at all relevant times.

56. Plaintiff made a claim for dismemberment benefits under his AD&D policy for the injuries sustained in the January 23, 2023 accident.

57. WNIC and CNO Services determined that Plaintiff was entitled to benefits under his AD&D policy for his injuries sustained in the January 23, 2023 accident, but paid him an arbitrary and/or incorrect amount and/or partial amount of only $4,100, when the medical records within the Defendant's possession, custody, and control indicated his claim was worth approximately ten (10) times this amount.

58. Plaintiffs' two amputated legs alone should have resulted in the tender of benefits of $40,000, and the broken bones, surgeries, hospital stay, rehabilitation services, and other medical care and treatment should have resulted in an amount far greater than the partial payment of $4,100.

## COUNT II
### BAD FAITH – 42 PA.C.S. §8371
### (WNIC ONLY)

59. Plaintiff incorporates all paragraphs in this Complaint by reference, as though fully set forth herein.

60. The Defendants should have tendered approximately *ten (10) times* the amount of the partial payment, when the partial payment was tendered.

61. A reasonable investigation was conducted and the finding of coverage was retracted for an unreasonable reason, as no exclusion applies.

62. The voluntary payment doctrine precludes the repayment of the partial payment.

63. As set forth above, there was no basis to reverse the coverage determination and deny coverage, or to request repayment of the $4,100 that WNIC and/or CNO Services voluntarily and correctly (partially) paid to Plaintiff on his claim.

64. WNIC and CNO Services, through one or more of its agents and/or employees, knew of or recklessly disregarded this lack of basis. The basis for WNIC's and CNO Services reversal, denial, and requested repayment was to generate more profit, in reckless and/or deliberate disregard for the welfare of its insured, acting with malice.

65. Defendant has a deceptive, uniform, and standardized policy and practice not to pay the amounts due and owing (i.e, make a partial payment), within a reasonably prompt fashion, and/or then to retract coverage and seek repayment in an effort to prejudice its insureds and increase profits.

## COUNT III
## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
## (UTPCPL)
## (WNIC AND CNO SERVICES)

66. Plaintiff incorporates all paragraphs by reference, as though fully set forth herein.

**Unfair Insurance Practices Act (UIPA)** [2]

67. Since there was no legal basis to request any repayment from Plaintiff, the collection letters sent by WNIC and CNO Services, dated July 13, 2023 and July 28, 2023,

---

[2] Plaintiff is not making any independent claim under the UIPA, but rather, is alleging a violation of the UIPA for purposes of establishing liability under the FCEUA and UTPCPL.

10

attempted to collect on a purported debt that was not legally collectible, and therefore, created a high likelihood of confusion and/or misunderstanding.

68. Defendants' actions constitute unfair and/or deceptive acts and practices in violation of the UIPA, including:

   a. Making, issuing, publishing or circulating in any manner an advertisement, announcement or statement containing any representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business which is untrue, deceptive or misleading. 40 Pa.C.S. 1171.5(a)(2).

   b. Any of the following acts if committed or performed with such frequency as to indicate a business practice shall constitute unfair claim settlement or compromise practices.

      i. Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue.

      ii. Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies.

      iii. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

      iv. Refusing to pay claims without conducting a reasonable investigation based upon all available information.

      v. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear. 40 Pa.C.S.A. 1171.5(a)(10)(i)-(iv), (vi).

**Fair Credit Extension Uniformity Act (FCEUA)**

69. WNIC and CNO Services were Creditors and/or Debt Collectors under the Fair Credit Extension Uniformity Act (FCEUA), 73 Pa. Stat. Ann. § 2270.1 *et. seq.* as requests for the repayment of (partially) paid coverage payments is a regular activity.

70. The FCEUA establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices regarding the collection of debts.

71. The FCEUA provides, in pertinent part:

(a) By debt collectors. – It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act (Public Law 95-109, 15 U.S.C. § 1692 et seq.).

(b) By creditors. – With respect to debt collection activities of creditors in this Commonwealth, it shall constitute an unfair or deceptive debt collection act or practice under this act if a creditor violates any of the following provisions:

> (5) A creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:
> …
>
> (ii) The false representation of the character, amount or legal status of any debt.
> …
>
> (x) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

73 Pa. Stat. Ann. § 2270.4

72. WNIC and CNO Services violated the provisions of the FCEUA referenced herein.

73. The FCEUA states that: "It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act." 73 Pa. Stat. Ann. § 2270.4(a).

74. The FCEUA states that a violation(s) of the FCEUA constitutes a violation of the UTPCPL, 73 Pa.C.S. §§ 201-1, *et seq*. 73 Pa. Stat. Ann. § 2270.5(a).

**Fair Debt Collection Practices Act (FDCPA)**

75. At all relevant times, Plaintiff was a "consumer" under the FDCPA (15 U.S.C. § 1692(a)(3)).

76. CNO Services is a debt collector under the FDCPA (15 U.S.C. § 1692(a)(6)) (and the FCEUA by incorporation) because it uses the mail and other instrumentalities of interstate commerce in its business and/or because it regularly engages in debt collection on behalf of others (here, WNIC).

77. The FDCPA, 15 U.S.C. § 1692e, provides that:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
…

(2) The false representation of –

    (A) the character, amount, or legal status of any debt; or
…

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer … that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.
…
(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

78. The FDCPA, 15 U.S.C. § 1692f, provides that

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
…

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) <u>unless such amount is **expressly** authorized by the agreement creating the debt or permitted by law</u>.

…

79. The FDCPA, 15 U.S.C. § 1692g, provides that:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector **shall** … send the consumer a written notice containing – …

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

80. Both collection letters sent to Plaintiff failed to provide the necessary disclosure notices pursuant to, *inter alia,* 15 U.S.C. § 1692g – 15 U.S.C. § 1692f.

81. WNIC and CNO Services violated the above provisions of the FDCPA, 15 U.S.C § 1692, *et. seq*.

**Voluntary Payment Doctrine**

82. Under the voluntary payment doctrine, when a payment is made voluntarily "with full knowledge of all the facts, or means of knowledge of all the facts" and without

any fraud, misrepresentation, duress, or coercion, the payment is not subsequently recoverable.

83. Since there was no legal or other basis to request any repayment from Plaintiff, the collection letters dated July 13, 2023 and July 28, 2023, attempted to collect on a purported debt that was not legally collectible, and therefore, the communications sent were misleading, deceptive, and/or served to misrepresent the legal status of the purported debt.

84. As a direct result of these and other deceptive acts and practices of these Defendants, Plaintiff suffered an ascertainable loss, including but not limited to the loss of monies that should have been paid by the policy and other financial harms. Moreover, Plaintiff has experienced fright and emotional anguish as a direct result of the Defendants improper collection tactics. At the same time, upon information and belief, the failure of Plaintiff to pay this purported debt (that was not legally collectible) would have resulted in WNIC and CNO Services cancelling his AD&D policy.

85. For the reasons stated herein and other reasons, WNIC and CNO Services violated, independently and/or collectively, the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa.C.S. §§ 201-1, *et seq.* by, *inter alia,* the Fair Debt Collection Practices Act, 15 USC 1692, *et seq.*, the Fair Credit Extension Uniformity Act (FCEUA), 73 Pa. Stat. Ann. § 2270*, et seq.,* the Unfair Insurance Practices Act[3] (UIPA), 40 Pa.C.S.A. 1171.5(a), *et seq., and/or* the voluntary payment doctrine.

---

[3] See, *Pekular v. Eich*, 355 Pa. Super. 276, 288-290, 513 A.2d 427, 433- 434 (1986)(holding that an insured, like any other consumer may file an action under the UTPCPL and such claims are not preempted by the UIPA).

## COUNT IV
### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)
### (WNIC AND CNO SERVICES)

86. Plaintiff incorporates all paragraphs by reference, as though fully set forth herein.

87. WNIC and/or CNO Services violated the FDCPA, 15 U.S.C. § 1692, *et. seq*, *inter alia,* as provided herein, resulting in damages suffered by Plaintiff.

## COUNT V
### DECLARATORY JUDGEMENT ACT
### (WNIC AND CNO SERVICES)

88. Plaintiff incorporates all paragraphs by reference, as though fully set forth herein.

89. Plaintiffs seek declarations as set forth below by and through the aforementioned statutes and pursuant to 28 U.S.C. 2201(a).

WHEREFORE, Plaintiff, who has suffered actual damages as a result of these violations, requests that this Honorable Court enter judgment against Defendants, jointly and severally, as follows:

A. Award compensatory damages in the amount of all AD&D dismemberment, injury, medical, and other benefits that Plaintiff is found to be entitled to under his AD&D policy with WNIC pursuant to the policy;

B. Award monetary damages as provided by 15 U.S.C. 1692(k), together with attorney's fees and costs as may be available under the FDCPA, 15 U.S.C. §1692, *et seq*.;

C. Award compensatory (trebled) and punitive damages, attorney fees, costs, and expenses pursuant to 42 Pa.C.S. §8371 and the UTPCPL and interest on all amounts awarded from the date the claim was made equal to the prime interest rate plus 3% pursuant to 42 Pa.C.S. §8371;

D. Temporarily and permanently enjoin any attempt to collect a partial payment of coverage (i.e., the $4,100.00 that was paid on

16

Plaintiff's claim) pursuant to UTPCPL, 73 P.S. §201-9.2 (allowing the Court to provide additional relief as it deems necessary or proper), 73 Pa. Stat. Ann. §2270, the FDCPA, 42 PA.C.S. §8371, and the Voluntary Payment Doctrine;

E. Declare that (a) WNIC had/has no legal basis to seek the return of its $4,100 voluntary payment; (b) CNO is a debt collector; and (c) that neither CNO nor WNIC had/has a contractual right for any repayment of a (partial) coverage payment; CNO and WNIC violated the statutes; and,

F. Award any other relief that this Honorable Court deems just and equitable.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.
*/s/ Richard Shenkan*
Richard Shenkan
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that all counsel subscribe to the ECF and have received notice of this pleading contemporaneously when filed.

SHENKAN INJURY LAWYERS, LLC.
*/s/ Richard Shenkan*
Richard Shenkan
*Attorney for Plaintiff*